[No. 8251-9-II.   Division Two.   August 12, 1987.]

TITUS PRESTON, *Appellant,* v. PIERCE COUNTY, *Respondent.*

*Paul Lindenmuth, Michael E. Carroll,* and *Neil J. Hoff,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Douglas W. Vanscoy, Deputy,* for respondent.

PETRICH, J.—Titus Preston appeals a summary judgment order which dismissed his claim for personal injuries against Pierce County.

The issues on appeal are: (1) whether the trial court erred in granting summary judgment in the County's favor on the ground that the Washington recreational land use immunity act, RCW 4.24.200 *et seq.,* applied as a matter of law to bar Preston's claim; and (2) whether a plaintiff who alleges the theory of attractive nuisance in his complaint, but fails to argue the theory in opposition to the defendant's motion for summary judgment, has preserved that issue for appeal.

We reverse, holding that the trial court erred in granting the County summary judgment because the plaintiff presents material issues of fact with regard to whether the Washington recreational land use immunity act, RCW 4.24.200 *et seq.,* applies to bar Preston's claim. Given our disposition of the first issue, we need not reach the second.

On either February 7, 1980, or February 11, 1980, Titus Preston, then age 6 or 7, broke his ankle when his foot slipped into the exposed moving parts of the center section of a merry–go–round. The merry–go–round was located in a park maintained by Pierce County.

Originally, the merry–go–round's moving parts had been

covered by a fiberglass dome safety cover. This dome had been removed some time prior to the accident. Two maintenance men who had worked for the County at the time of the accident stated in their affidavits that the merry-go-round's exposed parts were connected to metal which displayed the words "Keep Off." Titus testified that he did not remember whether there had been writing on the merry-go-round.

On May 1, 1980, Preston sued the County. His complaint alleged in part that the merry-go-round constituted an attractive nuisance. On September 19, 1984, the County filed a motion for summary judgment in which it argued that the Washington recreational use statute, RCW 4.24-.200 *et seq.*, shielded it from liability. Preston countered that there were material issues of fact with regard to whether the statute applied. Neither party mentioned the doctrine of attractive nuisance at the hearing on the County's motion.

The trial court granted the County's motion on September 28, 1984, and entered a written order on October 12, 1984. Preston now appeals from that order, arguing in part that the merry-go-round constituted an attractive nuisance.

> On summary judgment motions, the reviewing court takes the position of the trial court, assuming facts most favorable to the nonmoving party. The burden is on the moving party to prove there is no genuine issue as to a fact which could influence the outcome at trial.

(Citations omitted.) *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). "[S]ummary judgment is not appropriate when reasonable minds might reach different conclusions". *Hartley,* 103 Wn.2d at 774. "If no genuine issue of material fact exists it must then be determined whether the moving party is entitled to judgment as a matter of law." *LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975). *See also* CR 56(c).

█ The Washington recreational use statute, RCW 4.24-

.210, shields landowners such as Pierce County[1] from liability for injuries to persons who use the land for outdoor recreation if: (1) the injury is not intentional; (2) no fee was charged for the land's use; and (3) the injury was not caused by a "known dangerous artificial latent condition for which warning signs have not been conspicuously posted."

Here, as the County notes in its brief, there has been no contention that the County either charged a fee, or intentionally caused Preston's injuries. Therefore, the issue is whether the boy's injuries were caused by a "known dangerous artificial latent condition for which warning signs have not been conspicuously posted."

The only case to interpret this phrase is *Morgan v. United States,* 709 F.2d 580 (9th Cir. 1983). The *Morgan* court found that "known" refers to the landowner's mental state while "latent" refers to a condition not readily apparent to the recreational user. *Morgan,* 709 F.2d at 583. Moreover, *Morgan* found that the statute contemplates actual not constructive knowledge to the landowner. We find *Morgan*'s reasoning persuasive.[2]

---

[1]*See McCarver v. Manson Park & Rec. Dist.,* 92 Wn.2d 370, 597 P.2d 1362 (1979), which holds that RCW 4.24.210 applies to a public entity such as a public park whose primary purpose is to provide recreational facilities otherwise encompassed under the statute.

[2]*Morgan* presented the following analysis:

"The residual duty language is not a model of clarity. It appears somewhat inconsistent to describe a condition as 'known' and 'latent' in the same breath. Although the Washington courts have never construed the clause, we believe they would adopt the commonsense interpretation that 'known' refers to the landowners' mental state, while 'latent' refers to a condition not readily apparent to the recreational user. We believe, moreover, that the statute contemplates actual, not constructive, knowledge of the landowner. Had the Washington legislature intended to charge landowners with constructive knowledge it could have used more precise terminology such as '*known or should have known.*' It did not, and the reason is apparent from the statute's purpose and history.

"At common law, the recreational entrant in Washington would be characterized as a 'public' invitee. Washington landowners and occupiers owe invitees a duty of ordinary care to keep premises in a reasonably safe condition, which includes an affirmative duty to inspect the premises and discover dangerous conditions. Thus, absent the Washington Recreational Use Statute, the landowner or

Here, the record considered by the trial court contained the following evidence with regard to whether the County "actually knew" of the merry–go–round's condition prior to the accident: (1) Edward Stipes, a maintenance supervisor for the County, testified that he was informed on Monday, February 11, 1980, that the fiberglass cover had been removed, and that he then inspected it and started the process to repair it; (2) Foister Amburgy, another County maintenance worker, contradicted Stipes's testimony and testified that: he, Amburgy, first saw the vandalized merry–

occupier is liable for injuries caused by a dangerous condition of his land about which he knows or should know.

"The Washington Recreational Use Statute was enacted against the background of the foregoing common law. The purpose of the statute is 'to encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon. . . .' The statute effectuates that purpose by altering an entrant's status from common law trespasser– licensee–invitee classifications, to a new statutory classification of 'recreational user.' A defendant's duty to recreational users is defined by the statute, and consists of avoiding intentional injuries and posting conspicuous signs warning of any known dangerous artificial latent condition. In light of the foregoing, any interpretation of the residual duty clause that would charge the landowner with knowledge of the dangerous condition would emasculate the statute, because it would effectively convert recreational users into public invitees. That would defeat the statutory purpose of increasing the availability of recreational land by providing tort immunity.

"Legislative history supports our conclusions. During debate in the Washington Senate, it was proposed that the word 'known' should be added preceding 'dangerous artificial latent condition.' The senator offering the amendment gave the following example:

"Senator Donohue buys a section of range land. He has not explored it foot by foot. Someone says, 'can I hunt on this range land?' and the Senator says, 'Yes, you can hunt.' Unbeknownst to Senator Donohue, the prior owner somewhere dug a well and didn't properly cover it. Now this is an artificial, latent defect—artificial because man made, latent because if appears to be covered and isn't. Senator Donohue has not personally explored this whole section. This amendment says that the Senator does not have to post something *he doesn't know about.* If there is an open well that he knows about, he has to post it. But he shouldn't be liable for something on this land that he doesn't know about.

"H.R. 258, Wash.S.Jour., 42nd Legis. 875 (1967) (emphasis added). In light of the statute's language, history, and purpose, we believe Washington courts would require actual knowledge on the part of the landowner." (Citations omitted.) *Morgan v. United States,* 709 F.2d at 583–84.

go–round while on an inspection with Stipes; he reported the vandalism to his immediate supervisor who told him to fix the merry–go–round 6 to 10 days later; and his inspection with Stipes occurred "concurrent with his first inspection of the property which occurred in February, . . . around the 1st or thereabouts, or the 5th or 6th, somewhere in that area"; and (3) the Prestons claim that the accident occurred on February 11, 1980 (although their complaint states February 7, 1980).

Construing the above evidence most favorably to the nonmoving party, Titus Preston, it reasonably can be inferred that the County had actual knowledge of the defect in the first week of February (through Amburgy), and that the accident did not occur until the second week of February, on February 11, 1980.

The parties do not dispute that the merry–go–round was "dangerous" or "artificial." Therefore, the next question is whether the condition was "latent."

Generally, a "latent defect" is one which is "hidden." Black's Law Dictionary (4th ed. 1968). Again *Morgan* finds that "latent" in this context refers to "a condition not readily apparent to the recreational user." *Morgan,* 709 F.2d at 583. Whether a condition is "latent" or "patent" can present a factual question. *See Seattle–First Nat'l Bank v. Volkswagen of Am.,* 11 Wn. App. 929, 934, 525 P.2d 286 (1974), *aff'd sub nom. Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975).

Here, the record presented to the trial court contained the following evidence with regard to whether the merry–go–round's defect was "latent": (1) Titus Preston's mother testified that when the cover was off, the internal area was in plain view; (2) she also testified that she continued to allow her son to play on the merry–go–round despite the missing cover; and (3) Titus Preston testified that he had played on the defective merry–go–round several times before his accident.

Therefore, although the merry–go–round's internal mechanism was clearly visible, indicating a patent condi-

tion, the evidence suggests that its injury causing aspects were not readily apparent or were "latent" to both Titus Preston, the recreational user, and his mother. Thus, given that the facts must be construed in favor of the nonmoving party, the trial court erred in finding that the defect was not latent as a matter of law.

We now reach the last element with regard to whether Preston's injury was caused by a "known dangerous artificial latent condition for which warning signs have not been conspicuously posted", that is, whether warning signs were conspicuously posted.

Again, both maintenance men testified that the merry-go–round's exposed parts were connected to metal which displayed the words "Keep Off," while Preston testified that he could not remember any writing. A reasonable inference from such testimony in Preston's favor is that the signs were not sufficiently conspicuous to relieve the County from liability under the statute as a matter of law.

Given the above analysis, material issues of fact exist with regard to whether Preston's injuries were caused by a "known dangerous artificial latent condition for which warning signs have not been conspicuously posted." Therefore, the trial court erred in finding that the Washington recreational use statute, RCW 4.24.200 *et seq.,* shielded the County from liability as a matter of law. Moreover, in view of our disposition of the first issue, we find it unnecessary to reach the second.

REED, C.J., and ALEXANDER, J., concur.