[No. 24414-8-III.   Division Three.   November 14, 2006.]

KEN BRIGGS ET AL., *Appellants*, v. NOVA SERVICES ET AL., *Respondents.*

*Mary R. Giannini,* for appellants.

*Louis Rukavina III* (of *Louis Rukavina, P.S.*), for respondents.

¶1 Brown, J. — Certain managers and employees of Nova Services became dissatisfied with the management of Nova's executive director, Linda Brennan. Despite a corporate policy against communicating directly with Nova's board of directors (Board), the managers complained to the Board about Ms. Brennan. The Board investigated and supported Ms. Brennan. Ms. Brennan fired two of the managers for insubordination. By letter, the remaining managers and the employees gave the Board an ultimatum, requiring the Board to respond by a deadline, fire Ms. Brennan, and rehire the managers or they would walk out. The deadline passed with no Board response. The signatories were replaced after not returning to work. Their suit for wrongful termination, retaliation, negligent infliction of emotional distress, outrage, and negligent supervision was dismissed on summary judgment. We affirm.

## FACTS

¶2 Ken Briggs, Judy Robertson, Mark Johnson, Beverly Nunn, Jami Smith, and Shirley Bader worked for Nova Services as part of the management team (Managers). Nova is a not-for-profit corporation providing services for the disabled. Margaret Clark and Valerie Bruck were nonmanagement employees (Employees) of Nova. Linda Brennan is Nova's executive director.

¶3 On April 6, 2004, after earlier unsuccessfully trying to talk with Ms. Brennan about their perception of her poor management and aware of Nova's policy prohibiting em-

ployee contact with the Board, the Managers wrote to the Board about their concerns. The Board hired an employment attorney to investigate the Managers' allegations and hired Ellen Flanigan, a human resources consultant, to act as mediator. Ms. Flanigan set up a meeting between the Managers and the Board for June 29, 2004.

¶4 On July 12, 2004, Ms. Brennan met individually with managers Johnson, Nunn, Smith, and Bader, asking if each could move forward but not explaining she was going to fire Mr. Briggs and Ms. Robertson for insubordination later that day. Ms. Bader reacted negatively to the firing, giving Ms. Brennan her two week notice. This prompted Ms. Brennan to ask Ms. Bader if she could be loyal to her while she worked for Nova Services. Ms. Bader responded negatively. Ms. Brennan responded by asking Ms. Bader to leave at day's end and gave two weeks' pay.

¶5 On July 15, 2004, managers Johnson, Nunn, Smith, and Bader sent a letter to the Board. Employees Clark and Bruck, and four employees not now part of this appeal, added their signatures to the letter. The signatories demanded the "immediate removal" of Ms. Brennan and the "immediate reinstatement" of Mr. Briggs and Ms. Robertson by "4:30 P.M., Friday July 16, 2004" or they would "walk out of Nova Services." Clerk's Papers (CP) at 79. The Board did not respond. Ms. Brennan treated the signatories' letter and their failure to return to work the next Monday as a group resignation.

¶6 The named former Managers and Employees (collectively, Workers) sued Nova and Ms. Brennan (collectively, Nova) for wrongful termination, retaliation, negligent infliction of emotional distress, outrage, and negligent supervision. Nova moved for summary judgment. The Workers responded with a motion to compel discovery. At argument, the Workers unsuccessfully moved for continuance. The court eventually dismissed all claims and determined the motion to compel was moot. The Workers unsuccessfully moved for reconsideration. The Workers appealed.

## ANALYSIS

### A. Continuance

¶7 The issue is whether the trial court erred in denying the Workers' CR 56(f) motion to continue the summary judgment hearing.

■ ¶8 We review the denial of a motion to continue a summary judgment hearing for abuse of discretion. *Butler v. Joy*, 116 Wn. App. 291, 299, 65 P.3d 671 (2003). A court abuses its discretion if its decision is based on untenable grounds or untenable reasons. *Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990).

■ ¶9 CR 56(f) requires the opposing party to file an affidavit and state the reasons why additional time is necessary. A court may deny the motion if: "(1) the moving party does not offer a good reason for the delay in obtaining the evidence; (2) the moving party does not state what evidence would be established through the additional discovery; or (3) the evidence sought will not raise a genuine issue of fact." *Coggle*, 56 Wn. App. at 507.

¶10 The Workers moved to continue after the court decided certain affidavits contained inadmissible evidence. The Workers argued: "I would make the motion under [CR] 56(f) at this point that we have that opportunity at least to determine what's out there." Report of Proceedings (RP) at 11. Further, "The discovery cutoff date isn't even until mid September and we have ample opportunity to flush out the information that we believe we may find, will find, if we have the opportunity to make that effort." RP at 31.

¶11 The court asked the Workers to specify what information was expected. The Workers responded:

I want to depose the board of directors. I want to know what the board of directors knew about the organization, knew about the mission of the organization, heard or didn't hear from the executive director about what these employees were complaining about, whether they made any effort at all to find out if any of these things that these people said were true, if in fact they

simply gave the executive director the authority to fire two managers without clear logic for doing so, whether in fact those were retaliations against any of these people after they did what they did.

RP at 31-32.

¶12 The record does not show what specific evidence the Workers would be able to locate or how the evidence would raise a material issue of fact. *Joy*, 116 Wn. App. at 299. The Workers acknowledge the motion did not strictly fit the CR 56(f) continuance requirements but contend the court's primary consideration should have been justice considering the time remaining for discovery. *Joy*, 116 Wn. App. at 299; *Coggle*, 56 Wn. App. at 508. In both *Joy* and *Coggle*, the plaintiffs obtained new counsel shortly before the summary judgment hearing. *Joy*, 116 Wn. App. at 299; *Coggle*, 56 Wn. App. at 508. Neither counsel had adequate time to respond to the summary judgment motion. *Joy*, 116 Wn. App. at 299-300; *Coggle*, 56 Wn. App. at 508.

¶13 *Joy* and *Coggle* are distinguishable. Here, the issue is not whether the Workers had adequate time to respond to the motion. Rather, the court's focus was the Workers' failure to specify what evidence was desired and how that evidence would raise a material issue of fact. *Joy*, 116 Wn. App. at 299; *see Coggle*, 56 Wn. App. at 507-08. The court gave a tenable reason for its decision, and thus, the trial court did not err.

## B. Summary Judgment

¶14 The issue is whether the trial court erred when it granted Nova's motion for summary judgment and dismissed the Workers' claims for wrongful termination, negligent supervision, and retaliation.

¶15 We review a summary judgment grant de novo. *City of Seattle v. Mighty Movers, Inc.*, 152 Wn.2d 343, 348, 96 P.3d 979 (2004). Summary judgment is appropriate where no genuine issues of material fact exist and the issues can be resolved as a matter of law for the moving

party. *Id.* We view the facts in a light most favorable to the nonmoving party. *Malnar v. Carlson*, 128 Wn.2d 521, 535, 910 P.2d 455 (1996).

¶16 The Workers first contend Nova wrongfully terminated them for joining together to complain to the Board, violating a public policy allowing employees to join together and engage in "concerted activities" under RCW 49.32.020. Nova responds that the Workers inappropriately raise this issue for the first time on appeal. The Workers did not orally argue "concerted activities" at the summary judgment hearing but did discuss "concerted activities" in their memorandum in opposition to summary judgment. *See* RAP 2.5(a). Therefore, we proceed.

¶17 Generally, an at-will employee may be terminated without cause. *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 935, 913 P.2d 377 (1996). An exception exists if the termination contravenes public policy. *Id.* The public policy exception applies to " 'matter[s] [that] strike at the heart of a citizen's social rights, duties, and responsibilities.' " *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989) (quoting *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 52 Ill. Dec. 13 (1981)). It does not apply to matters that are "purely personal." *Palmateer*, 85 Ill. 2d at 130.

¶18 The public policy exception applies where an employee is terminated based on the exercise of a legal right or privilege. *Gardner*, 128 Wn.2d at 936. Washington recognizes an employee has a legal right or privilege to engage in "concerted activity" under RCW 49.32.020 (Washington labor regulations) without employer interference. *Id.* at 937; *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 751-59, 888 P.2d 147 (1995).

¶19 "Concerted activities" are activities undertaken by employees in unison with one another for the purpose of improving their "working conditions." *Bravo*, 125 Wn.2d at 752, 759; RCW 49.32.020. "Working conditions" relate to the terms and conditions of employment (collective bargaining). RCW 49.32.020; *Nat'l Labor Relations Bd. v. Wash.*

*Aluminum Co.*, 370 U.S. 9, 11-12, 17, 82 S. Ct. 1099, 8 L. Ed. 2d 298 (1962); *Bravo*, 125 Wn.2d at 748, 755, 759. "Concerted activities" also include collective employee activities for "other mutual aid or protections." RCW 49.32.020; *United Merchants & Mfrs., Inc. v. Nat'l Labor Relations Bd.*, 554 F.2d 1276, 1278 (4th Cir. 1977).

¶20 The term "concerted activity" in RCW 49.32.020 has been construed in light of its federal counterparts in 29 U.S.C. §§ 157-58 (National Labor Relations Act). *Bravo*, 125 Wn.2d at 751-55, 759. Federal law is persuasive due to text similarity between RCW 49.32.020 and 29 U.S.C. §§ 157-58. *Bravo*, 125 Wn.2d at 754-55; *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 651, 9 P.3d 787 (2000).

¶21 Both Washington and federal law recognize that nonunion employees have a right to engage in statutorily protected "concerted activities." *Wash. Aluminum Co.*, 370 U.S. at 14-15; *Bravo*, 125 Wn.2d at 754-55, 759. Neither RCW 49.32.020 nor 29 U.S.C. §§ 157-58 excludes nonunion employees.

¶22 First, regarding Mr. Briggs and Ms. Robertson, the April 6, 2004 letter complained of Ms. Brennan's management style and skills, including leadership, administration, finance shortcomings, board development and communications, failure to develop a corporate culture of open communications, and failure to develop community and governmental relations. One possible job misclassification was mentioned. Ms. Brennan then fired Mr. Briggs and Ms. Robertson for insubordination. Mr. Briggs' and Ms. Robertson's affidavits opposing the summary judgment motion merely suggest evidence about Ms. Brennan's management style and speculation about Mr. Johnson's possible job misclassification. Personal preferences and professional differences are not protected by RCW 49.32.020. *Dicomes*, 113 Wn.2d at 618.

¶23 Further, no evidence shows the Briggs and Robertson positions were misclassified. The April 6 letter did not protest Mr. Johnson's possible misclassification but was written to express their disapproval of Ms. Brennan's

management style and work ethics. The act of sending the April 6 letter to the Board was not "concerted activity" under RCW 49.32.020. *See Bravo*, 125 Wn.2d 745.

■ ¶24 Second, regarding Ms. Bader, her affidavits show she told Ms. Brennan before she signed the July 15, 2004 letter that she would leave the company if the situation did not improve. Ms. Brennan accepted this as notice to terminate her employment. When Ms. Brennan asked Ms. Bader if she could be loyal to her, Ms. Bader responded negatively. Ms. Brennan asked Ms. Bader to leave at the end of the day and granted her two weeks' pay.

¶25 Further, Ms. Brennan's affidavit shows Ms. Bader told Ms. Brennan she made a commitment to Mr. Briggs and Ms. Robertson that "they would all stay or all go." CP at 62. No material facts remain in dispute. Ms. Bader has not shown she was wrongfully terminated. As noted, the April 6 letter was not a protected activity because it merely raised personal managerial style differences and did not attempt to collectively bargain for terms and conditions of employment. Notably, Ms. Bader was no longer employed by Nova Services when she signed the July 15, 2004 letter. Given all, the trial court did not err in deciding Ms. Bader was not wrongfully terminated.

■ ¶26 Third, regarding the July 15 letter signatories, the letter stated the workplace conditions were "worse than ever" after the terminations of Mr. Briggs and Ms. Robertson. CP at 79. The signatories demanded Ms. Brennan's "immediate removal" and Mr. Briggs' and Ms. Robertson's "immediate reinstatement" by "4:30 P.M., Friday July 16, 2004" or they would "walk out of Nova Services." *Id.* The signatories would "walk out" unless the Board acted. *Id.* The demands were "non-negotiable." *Id.* The Board did not respond. Ms. Brennan treated the letter as a group resignation.

¶27 Given all, the signatories' conduct was not "concerted activity" as contemplated in *United Merchants & Manufacturers, Inc.*, or RCW 49.32.020 because the demands exceeded those recognized in prior cases and were not focused on any

term or condition of employment. The Workers were not protected in joining together to demand termination of Nova's highest level day-to-day manager, the executive director, based upon personal dissatisfactions with her management style. In other words, no protected public policy related protest is present.

¶28 Further, as Nova argues, the manager signatories are exempt from the protections in RCW 49.32.020 and consistent with federal law. Reasonable minds could reach but one conclusion: the April 6 letter clearly identifies the signatories as managers throughout its contents, not just by title.

¶29 Fourth, the Workers contend the Nova terminations amounted to improper retaliation for statutorily protected activity. A plaintiff must show three elements to prove a claim for retaliation: "(1) he or she engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there is a causal link between the employee's activity and the employer's adverse action." *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 862, 991 P.2d 1182 (2000). We reiterate: we are unpersuaded that any protected public policy related protest is shown in the facts. And, as noted above, the Managers were not engaged in a statutorily protected activity when they sent the April 6 letter to the Board.

¶30 Lastly, we turn to the negligent supervision claim. The Workers contend the affidavits in opposition to Nova's summary judgment motion raise a genuine issue of material fact as to whether Nova Services negligently supervised Ms. Brennan.

¶31 "An employer can be liable for negligently supervising an employee." *Herried v. Pierce County Pub. Transp. Benefit Auth. Corp.*, 90 Wn. App. 468, 475, 957 P.2d 767 (1998). A negligent supervision claim requires showing: (1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew, or should have known in the exercise of reasonable care, that the employee

posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries to other employees. *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48-49, 51, 929 P.2d 420 (1997). No evidence shows Ms. Brennan presented a risk of harm to the other employees. *Id.* Therefore, the Workers cannot prove a claim for negligent supervision.

## C. Motion To Compel Discovery

¶32 The issue is whether the trial court erred when it dismissed the Workers' motion to compel discovery. The Workers contend the motion to compel would have provided evidence to support their claim for negligent supervision. We review the denial of a motion to compel discovery for an abuse of discretion. *Lindblad v. Boeing Co.*, 108 Wn. App. 198, 207, 31 P.3d 1 (2001).

¶33 The Workers moved to compel Nova Services to provide materials unrelated to risk of harm. For example, bylaws and bylaw amendments, board minutes, Ms. Brennan's credit card and expense receipts, budgets and financial statements, and contracts would not show Ms. Brennan presented any risk of harm to Nova Services workers. *Niece*, 131 Wn.2d at 48-49. Therefore, the trial court did not abuse its discretion in denying the Workers' motion to compel. *Lindblad*, 108 Wn. App. at 207.

¶34 Affirmed.

KULIK, J., concurs.

¶35 SWEENEY, C.J. (dissenting) — This case was dismissed on summary judgment. That was improper if there is any genuine issue of material fact. CR 56(c); *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 487, 84 P.3d 1231 (2004). I conclude that there are genuine issues of material fact and therefore respectfully dissent.

¶36 I see those factual disputes as follows:

CONCERTED ACTION

¶37 Shirley Bader, Mark Johnson, Beverly Nunn, Jami Smith, Margaret Clark, and Valerie Bruck sent a letter to the Nova Services Board of Directors (Board). Clerk's Papers (CP) at 79. The letter stated that the workplace conditions were "worse than ever" after the terminations of Ken Briggs and Judy Robertson. *Id.* The letter demanded the immediate removal of Linda Brennan and the immediate reinstatement of Mr. Briggs and Ms. Robertson. *Id.* It also demanded that the Board respond with a plan of action or the employees would walk off the job. *Id.* The letter stated the employees would not return until the Board took action. *Id.*

¶38 The Board did not respond to the letter, and the employees walked off the job. *Id.* at 184. Ms. Brennan treated the letter as a group resignation. *Id.* at 62.

¶39 The employees' conduct in joining together to send a letter to the Board, and in walking off the job, was to protest the discharge of their fellow employees. *United Merchants & Mfrs., Inc. v. Nat'l Labor Relations Bd.*, 554 F.2d 1276, 1278 (4th Cir. 1977). This is a protected "concerted activity." RCW 49.32.020; *United Merchants*, 554 F.2d at 1278. And these employees were terminated for that concerted action. Or at least, they have raised an issue of fact as to whether they were wrongfully terminated for that concerted action.

MANAGERIAL STATUS

¶40 Nova Services argues several of the employees are exempt from the protections in RCW 49.32.020 since they are managerial employees. Mr. Briggs responds that Nova Services provides no basis for its assertion that he is an exempt managerial employee. He further argues that even if Nova Services did classify him as a managerial employee, there is no evidence to show he was properly classified.

¶41 Managerial employees are excluded from the statutory protections of the National Labor Relations Act (Act) (federal counterpart to RCW 49.32.020). 29 U.S.C. §§ 157-

-58; RCW 49.32.020; *Nat'l Labor Relations Bd. v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 576-77, 114 S. Ct. 1778, 128 L. Ed. 2d 586 (1994). The Court defines managerial employees as "those who 'formulate and effectuate management policies by expressing and making operative the decisions of their employer.' " *Health Care & Ret. Corp.*, 511 U.S. at 576 (quoting *Nat'l Labor Relations Bd. v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 288, 94 S. Ct. 1757, 40 L. Ed. 2d 134 (1974)). An employee's title is not determinative of his or her classification under the Act. *Bell Aerospace Co.*, 416 U.S. at 290. Additional information is required, such as the employee's "actual job responsibilities, authority, and relationship to management." *Id.* at 290 n.19.

¶42 This issue was not addressed in the trial court.

¶43 Mr. Briggs contends Nova Services terminated him and the other employees in retaliation for joining together to make complaints to the Board—again, a statutorily protected activity.

¶44 They must show the following for a claim for retaliation: statutorily protected activity, an adverse employment action, and a causal link between the employee's activity and the employer's adverse action. *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 861-62, 991 P.2d 1182 (2000).

¶45 Mr. Johnson, Ms. Nunn, Ms. Smith, Ms. Clark, and Ms. Bruck engaged in a protected activity when they sent the July 15, 2004 letter. Ms. Brennan considered the employees to have resigned when they walked off the job in response to the Board's failure to respond to the demands in their letter. There is then a sufficient causal link between the employees' activities and the employer's actions. *Id.* The question of fact here is whether any of the employees are excluded from the statutory protections under RCW 49.32.020 due to their employment status. *See Health Care & Ret. Corp.*, 511 U.S. at 576.

¶46 I would reverse and remand for trial on these fact questions.