# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CORRINE WILLIAMS, wife, | No. 57145-5-II |
| Appellant, | |
| PAUL WILLIAMS, husband, | |
| Plaintiff below, | |
| v. | |
| CITY OF CENTRALIA, a government entity; CENTRALIA SCHOOL DISTRICT 401, a quasi-governmental entity, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, A.C.J. — Corrine Williams sued the City of Centralia and Centralia School District for negligence after falling in Fort Borst Park and breaking her ankle. Williams was at the park tailgating with the intention of later attending a softball tournament. Williams fell when she stepped off a sidewalk into a grassy swale, and she alleges that the height drop-off between the two surfaces was a hidden hazard that caused her fall. The District moved for summary judgment, arguing it was immune from suit under recreational use immunity and that even if immunity did not apply, Williams failed to present evidence of breach. The City joined in the summary judgment

motion.[1] The court granted summary judgment and dismissed the case, finding that Williams failed to present evidence of breach and that the defendants were entitled to recreational use immunity as a matter of law.

Williams now appeals, arguing that the court erred in granting summary judgment. She argues that the District and the City are not entitled to summary judgment based on the recreational use immunity statute because factual disputes remained as to whether the softball tournament was charging fees for attendance, whether the site of her fall was integral to the park's fee-generating area, and whether the height difference between the sidewalk and the swale was a latent condition not readily apparent to a recreational user.

We affirm the trial court's grant of summary judgment because Williams has failed to present evidence showing (1) that a fee was charged, (2) that the site of the injury was integral to any fee-generating portion of the park, or (3) that the injury-causing condition was latent.

---

[1] Williams filed an expert declaration in response to the motion. The City moved to strike the declaration, and the court initially granted the motion, a decision Williams argues was in error. The parties have dedicated much of their briefing to the issue of whether Williams' expert should have been excluded pursuant to *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997). However, this issue is not properly before us because, although the trial court ostensibly struck the expert's declaration, it nevertheless considered the declaration when ruling on the summary judgment motion. Therefore, for the purposes of our de novo review, we will consider the expert's declaration.

FACTS

I. INJURY

Fort Borst Park is a 101-acre park that sits on land owned by the City and land owned by the District. The park does not charge an entry fee or parking fee. The park includes several softball fields, divided across two sections of the park known as the Borst Park Softball Complex (Wheeler Field and Fields 2-4) and the Quad Fields (Fields 6-9). Tournaments are sometimes held at the Softball Complex for which the tournament's host can charge a fee. Adjacent to Field 9 lies a parking lot. A sidewalk runs between the parking lot and the Quad Fields. Between the parking lot and the sidewalk lies a swale,[2] and the swale is transected by culverts. The culvert pipes are topped with gravel and the rest of the swale is grassy.

On May 18, 2016, Williams drove to Fort Borst Park after work intending to watch a softball tournament at the Softball Complex. Williams did not pay a fee to enter the park or to park in the parking lot. After parking her car in the parking lot adjacent to Field 9, Williams joined a group of 10-12 people drinking beer and eating pizza. Some of the tailgaters were standing in the swale and others were on the other side of the swale. Williams walked across the swale to the sidewalk where her grandchildren were standing. Then, she saw two of her friends in the parking lot and called to them, intending to walk in their direction. She did not want to use one of the gravel paths across the swale because to reach the gravel path would have required backtracking and walking through busy parking lot traffic. Without looking down, she stepped onto the swale from the sidewalk and immediately lost her balance due to the height drop-off. Williams fell and broke

---

[2] A swale is "a narrow shallow troughlike depression created to carry water during rainstorms or collect and slowly release water into the landscape." Clerk's Papers at 97.

multiple bones in her ankle, an injury that required multiple surgeries and left Williams in constant, intense pain that impacts her quality of life.

## II. LITIGATION

Williams sued the City of Centralia and Centralia School District for negligence in July 2019. She alleged that her fall was caused by "the deceptive discrepancy in the height difference between grass culvert and concrete walkway." Clerk's Papers (CP) at 4. The City and the District asserted recreational use immunity as an affirmative defense.

In the sole deposition in this litigation, Williams was deposed in September 2020. She testified that she was not charged a fee to enter the park or to park in the parking lot. As to whether she would have been charged a fee to enter the softball tournament, she was "not a hundred percent sure that they were charging entries into district tournaments at that time, but that's a standard now." *Id.* at 234. With respect to the condition of the ground, she testified that when she stepped up from the swale onto the sidewalk, she did not notice any overgrown grass in the area. She did testify that "[t]here was a drop between the concrete and the base of that grass" and that "everybody was drawing attention to it" after she fell. *Id.* at 239.

Williams was questioned about an exhibit consisting of her unsigned and undated handwritten notes. Williams did not recall when she wrote the notes. In the notes, she wrote "[s]tepped down off edge of sidewalk to grass that appeared even – it wasn't." *Id.* at 92. She continued, "4-6 inch 'hole' with overgrown grass." *Id.* When asked, she clarified that what her notes called a hole would be better described as a drop-off or ledge, but did not elaborate on the length of the grass. She stated, "there was grass all around it" and that she "couldn't see that" referring to the drop-off. *Id.* at 240.

4

On June 10, 2022, the District moved for summary judgment, arguing that (1) it was immune from liability as a matter of law under recreational use immunity, (2) Williams failed to present sufficient evidence that the District breached any duty, and (3) Williams caused her own injury by failing to exercise reasonable care. It attached portions of Williams' deposition and a declaration by its Director of Facilities and Maintenance, Eric Wilson. Wilson declared that "[w]hen the park's Softball Complex is used for tournaments, the host of the tournament generally charges a fee for admission to the [S]oftball [C]omplex." *Id.* at 96. The City joined in the District's motion.

Williams responded that genuine issues of material fact remained as to (1) whether the area where Williams fell was an integral part of the fee-generating part of the park, which would preclude recreational use immunity as a matter of law; (2) whether the height difference was a known, artificial, dangerous, latent condition; (3) whether the defendants breached their duty to Williams by failing to keep the park reasonably safe for invitees; and (4) whether and to what extent Williams was contributorily negligent.

In support of her response, Williams provided the declaration of safety expert Tom Baird. She hired Baird on June 8, conducted a site visit with Baird on June 16, received Baird's report on June 21, filed the declaration and provided a copy of Baird's report to the defendants on June 27, 2022. In his declaration, Baird defined "hazard" as "a condition that can cause injury to a person." *Id.* at 364. He defined "unreasonably hazardous and dangerous condition" as "a condition that could have, and should have, been eliminated prior to an injury incident." *Id.* He opined as follows:

> **Opinion #1** - The elevated walkway with grass overgrowing it created a hidden change in elevation and a trip hazard that was an unreasonably hazardous and dangerous condition that presented an unreasonable and foreseeable risk of

injury to Ms. Williams as she [was] crossing from the walkway across a dry swale to the parking lot abutting the swale.

**Opinion #2** - The unreasonably hazardous and dangerous condition of the elevated walkway with grass overgrowing it created a hidden change in elevation and a trip hazard and was such that the owners and managers of the property should have discovered the condition through reasonable care.

**Opinion #3** - The owners and managers of the property failed to perform adequate inspections to discover the unreasonably hazardous and dangerous [condition] of the elevated walkway with grass overgrowing it that created a change in elevation and a hidden trip hazard.

**Opinion #4** - The owners and managers of the property failed to maintain the incident area in a reasonably safe condition so that the hidden trip hazard was not present.

**Opinion #5** - No warnings were placed to warn Ms. Williams of the unreasonably hazardous and dangerous condition of the elevated walkway with grass overgrowing it that created a change in elevation and a hidden trip hazard.

**Opinion #6** - The unreasonably hazardous and dangerous condition of the elevated walkway with grass overgrowing it that created a change in elevation and a hidden trip hazard, could have, and should have, been eliminated prior to the incident.

**Opinion #7** - The unreasonably hazardous and dangerous condition of the elevated walkway with grass overgrowing that created a change in elevation and a hidden trip hazard was the cause of Ms. Williams' trip and fall.

**Opinion #8** - Signage should have been placed to guide persons to a designated walkway to the baseball fields and to prohibit persons from crossing from the parking lot over the swale to the walkway.

**Opinion #9** - It is more likely than not that Ms. Williams stepped onto the walkway without realizing that there was a change in elevation because the change in elevation was hidden from view because of the grass overgrowing it.

*Id.* at 365-66. Baird's opinions were based in part on his observations and photos of conditions in the park on June 16, 2022. He also examined photos of Williams lying on the grass immediately after her fall and photos of the park taken by Williams' former attorney on an unknown date.

The City and the District jointly moved to strike Baird's declaration pursuant to the test outlined in *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997), as a sanction for violating the rules of discovery. The court initially granted the motion to strike Baird's declaration for summary judgment purposes. However, the court would later explain, "[e]ven though I have granted the motion to strike, for purposes of my [summary judgment] analysis I will address and include Mr. Baird's material in the event that any reviewing Court finds that I was in error in not – in granting the motion to strike." Verbatim Rep. of Proc. (VRP) at 26. The court's written summary judgment ruling noted, "[n]otwithstanding the court's ruling striking Mr. Baird's report, the court, even considering the contents thereof, finds that it does not affect the outcome of this motion." CP at 472.

After hearing oral argument, the court granted the summary judgment motion and dismissed the case. It found that the recreational use immunity statute protected the defendants from suit as a matter of law, reasoning that Williams did not present evidence showing that fees were collected at the tournament, and even if they were, Williams was not on her way to the game but engaging in separate recreational activities when she fell. It further reasoned that Williams had not created a genuine issue of material fact as to whether the condition was latent because her own testimony indicated that the condition was obvious. Finally, it granted summary judgment on the alternative ground that Williams failed to present sufficient evidence showing that the swale was unreasonably dangerous. Upon considering Baird's testimony, the court reasoned that any evidentiary inconsistencies created by Baird's declaration were "confined to inconsistencies within the plaintiff's evidence, not between the evidence presented by the opposing parties." VRP at 27. It thus concluded that Baird's report did not raise any genuine issues of dispute that would preclude

summary judgment. The court declined to grant summary judgment on the ground of contributory negligence.

## DISCUSSION

### I. SUMMARY JUDGMENT

Williams argues that the City and the District are not entitled to summary judgment because they are not immune from suit under Washington's recreational use immunity statute, RCW 4.24.210. She contends that her expert's declaration created factual disputes as to whether the injury-causing condition was latent. She also argued below, but does not[3] argue before this court, that summary judgment is improper because she raised issues of material fact as to whether the defendants breached the ordinary duty of reasonable care owed to invitees absent recreational use immunity. We disagree with Williams and affirm the trial court.

---

[3] The District points out in its brief that Williams entirely ignored the trial court's alternate basis for granting summary judgment—that she failed to show a genuine issue of material fact on whether the District or City breached the duty of ordinary care. Williams asserts in her reply brief that she had "ma[de] her position very clear" on this issue throughout her opening brief. Reply at 12. However, Williams' opening brief did not address the issue in any detail or include it in her assignments of error. We decline to consider Williams' claim that the defendants breached their duty of ordinary care because "[p]assing treatment of an issue or lack of reasoned argument" does not merit our consideration. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

A. LEGAL PRINCIPLES

We review summary judgment rulings de novo, viewing the facts in the light most favorable to the nonmoving party. *Davies v. Multicare Health Sys.*, 199 Wn.2d 608, 616, 510 P.3d 346 (2022). We consider only the evidence that was brought to the trial court's attention. RAP 9.12. Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists where the evidence would allow a reasonable jury to return a verdict in favor of the nonmoving party. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017).

A party moving for summary judgment bears the initial burden of showing there is no genuine issue of material fact. *Id.* After the moving party meets this initial burden, "the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact." *Id.* If, at this point, the nonmoving party " 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

To rebut the moving party's contentions, the nonmoving party's response must be based on "personal knowledge, must set forth facts that would be admissible in evidence, and must show affirmatively that the declarant of such facts is competent to testify to the matters stated therein." *Lane v. Harborview Med. Ctr.*, 154 Wn. App. 279, 286, 227 P.3d 297 (2010). Expert opinion on an ultimate question of fact generally is sufficient to defeat summary judgment. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 301, 449 P.3d 640 (2019). This is true so long as the opinion is not

speculative, conclusory, or based on assumptions. *Id.* Conclusory statements, speculation, and argumentative assertions are insufficient to create a genuine issue of material fact. *Greenhalgh v. Dep't of Corrs.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011).

Plaintiffs suing for negligence must prove: "(1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). The existence of a duty is a threshold question of law. *Id.* at 128. In actions for premises liability, the scope of the landowner's duty depends on the common law classification of the injured party; *i.e.* whether the plaintiff is an invitee, a licensee, or a trespasser. *Id.* "A landowner generally owes trespassers and licensees the duty to refrain from willfully or wantonly injuring them, whereas to invitees the landowner owes an affirmative duty to use ordinary care to keep the premises in a reasonably safe condition." *Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 41-42, 846 P.2d 522 (1993).[4]

Recreational use immunity, defined in RCW 4.24.210, essentially "creates an exception to Washington's premise liability law regarding public invitees." *Camicia v. Howard S. Wright Const. Co.*, 179 Wn.2d 684, 694, 317 P.3d 987 (2014). Landowners are entitled to recreational use immunity if the land in question is "(1) open to members of the public (2) for recreational purposes and (3) for which 'no fee of any kind [is] charged.' " *Hively v. Port of Skamania County*, 193 Wn. App. 11, 15, 372 P.3d 781 (2016) (alteration in original) (internal quotation marks omitted) (quoting *Camicia*, 179 Wn.2d at 695-96). Because recreational use immunity is an affirmative

---

[4] Williams argued below that she was an invitee, and the District accepted this point for summary judgment purposes. The City does not appear to oppose such treatment for summary judgment purposes.

defense, the landowner bears the burden of proving immunity applies. *Schwartz v. King County*, 200 Wn.2d 231, 238, 516 P.3d 360 (2022). When the supporting facts are undisputed, the trial court may determine immunity as a question of law. *Camicia*, 179 Wn.2d at 693.

Landowners may retain recreational use immunity for part of their land despite charging a fee to use another part. *Plano v. City of Renton*, 103 Wn. App. 910, 914, 14 P.3d 871 (2000). In this scenario, the landowner "must show only that it charges no fee for using the land or water area where the injury occurred." *Id.* at 915. A landowner is not entitled to immunity when the place where the injury occurred is a "necessary and integral part" of the fee-generating area. *Id.*

Even where the three elements of recreational use immunity are met, immunity nevertheless will not apply to known dangerous artificial latent conditions for which the landowner fails to warn the public invitee. *Camicia*, 179 Wn.2d at 702; RCW 4.24.210(4)(a). The landowner may retain recreational use immunity upon a showing that any one of the characteristics is absent. *Schwartz*, 200 Wn.2d at 239. A latent condition is one that is not readily apparent to the general class of recreational users. *Id.* at 241.

B. APPLICATION

We conclude that Williams failed to rebut the affirmative defense of recreational use immunity as a matter of law. The evidence suggesting that a fee would have been charged is speculative and is insufficient for any reasonable jury to find that the City or the District was charging any such fee on the day in question. Nor could a reasonable jury find that Williams fell in an area that was integral to the fee-generating portion of the park. Therefore, the trial court correctly granted summary judgment.

11

Williams fails to raise a genuine dispute of fact about whether a fee was charged. Williams admits she did not pay a fee to enter the park on the day that she fell. Williams was "not a hundred percent sure" that any fee would have been charged for a softball tournament in 2016. CP at 234. She testified only that such fees were "standard" at the time of her deposition in 2020, and speculated that the same would have been true in 2016. *Id.* She presented no evidence that either defendant was the entity charging fees for tournament entry, failing to rebut the defense evidence that "[w]hen the park's Softball Complex is used for tournaments, the *host of the tournament* generally charges a fee for admission to the softball complex." *Id.* at 96 (emphasis added).

Even if Williams did show that a fee was charged in 2016, she would still need to show that her fall occurred in an area integral to the fee-generating portion of the park. Williams relies on *Plano v. City of Renton* to argue that the area where she fell was integral to the fee-generating portion of the park as a matter of law. In *Plano*, the plaintiff was injured on a marina ramp leading to the park's fee-generating dock, but had not yet paid the fee. *Plano*, 103 Wn. App. at 915. Patrons could not access the dock without walking up one of the ramps. *Id.* The ramps were built specifically for dock access. *Id.* On these facts, the court held that the ramps were a necessary and integral part of the fee-generating area and that the landowner was not entitled to immunity as a matter of law. *Id.*

In *Hively v. Port of Skamania County*, this court applied *Plano* to facts similar to those at issue here. In *Hively*, the plaintiff was injured on a path along the waterfront on her way to the restroom in a park owned by the Port of Skamania County. *Hively*, 193 Wn. App. at 13. The path and restroom were open to the public without a fee, but the Port charged moorage fees to cruise ships and charged fees for private event rentals at the park. *Id.* This court reasoned that the path

was not integral to the fee-generating portion of the park because "[a] person is not *required* to pay for or use either the path or the restroom as a part of any paid access" and because "[n]o evidence suggests that the path where Hively's injury occurred was constructed specifically for the purpose of providing access to the Port's fee-generating areas." *Id.* at 16. We affirmed the trial court's grant of summary judgment to the Port. *Id.* at 13.

Here, Williams did not present evidence showing that the location where she fell was integral to the fee-generating part of the park. The facts here resemble *Hively*: Williams does not dispute that she fell while tailgating, does not allege that crossing the swale was necessary to reach the softball tournament, and does not even show that she was walking in the direction of the tournament when she was injured. Indeed, she agrees that she was walking back toward the parking lot, for a social purpose, when she fell. The undisputed facts show that the area where Williams fell was not integral to the fee-generating portion of the park.

Finally, Williams argues that even if recreational use immunity applied, the defendants breached their duty under the immunity statute to warn of a known dangerous artificial latent condition. We disagree. The swale and corresponding height difference were open and obvious, not hidden. The condition is visible in many photos, and Baird's declaration cannot overcome such photographic evidence. We affirm.

## CONCLUSION

We affirm the trial court's summary judgment ruling. We decline to consider whether the plaintiff's expert declaration should have been struck pursuant to the *Burnet* factors.

No. 57145-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

MAXA, J.

LEE, J.